UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



FILED
MAR 06 2008

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNIVERSAL UNDERWRITERS INSURANCE COMPANY, a Kansas corporation, | * * * * | CIV 07-4164 MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION |
| Plaintiff, | * | |
| vs. | * | |
| TERRY SCHMIDT, | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On November 6, 2007, the same date as it filed its Complaint in this action, Plaintiff, Universal Underwriters Insurance Company, filed a Motion for Preliminary Injunction. Doc. 6. After conducting discovery in this matter, and briefing the issues, the parties were heard on the pending Motion for a Preliminary Injunction on February 25, 2008. For the reasons announced by the Court at the conclusion of the hearing as well as the reasons set forth in this Memorandum Opinion, the Motion for Preliminary Injunction is denied.

## FACTS

Defendant Terry Schmidt became employed as an account executive with Plaintiff Universal Underwriters Insurance Company (Universal), a Kansas corporation, in December of 2001. Schmidt's territory covered the entire state of South Dakota. Schmidt began his employment selling property, casualty and life insurance to automobile dealers. A South Dakota insurance license was required to sell those products. During Schmidt's employment with Universal, Schmidt also began selling automobile dealers finance products, including vehicle service contracts, GAP protection, tire and wheel protection, paint protection and theft deterrent. In July of 2007, Schmidt left his employment with Universal and became self employed selling finance products to automobile dealers in the State of South Dakota.

Prior to beginning employment with Universal Schmidt signed an employment agreement on

December 3, 2001. Paragraph 1(a) states "Employer does hereby employ the Employee and may license Employer as an insurance agent of Employer ... ." Paragraph 5 is entitled "PROPERTY OF EMPLOYER AND TRADE SECRETS." Paragraph 7 is entitled "ACTIVITY AFTER TERMINATION." Paragraph 7(a) provides :

> For a period of two(2) years, following termination of this Agreement, or following Employee's retirement, Employee shall not, except with written consent of Employer, directly or indirectly, for himself or others in any manner whatsoever, within the territory or territories to which he was assigned at any time within two years of such termination or retirement, procure, solicit, accept, refer, or aid another in the procurement, solicitation, acceptance or referral of policies, application or inquiries about insurance from any person, or firm, corporation or association then insured or which was insured by a policy or policies of insurance issued by Employer or any of its affiliated companies within one (1) year prior to such termination or retirement, or any insurance agency or broker with whom company regularly carried on business.

Paragraph 7(b) provides :

> Employee, after termination of this Agreement , shall not be prohibited from engaging in any phase of the insurance business provided that such activity shall not be in conflict with the provisions of this Agreement.

Paragraph 7( c) provides:

> For a period of two (2) years following termination of this Agreement or retirement, Employee shall not directly or indirectly solicit, encourage or attempt to induce any person, firm, corporation or association within the territory or territories to which Employee was assigned at any time within two years of such termination or retirement, and which was insured at such time by Employer, or any of its affiliated companies, to discontinue, cancel, terminate or decline renewal of such insurance with Employer.

Paragraph 14 of the Agreement provides that the Agreement shall be construed according to the laws of the State of Kansas. Neither party is challenging the application of Paragraph 14, and the Court has applied Kansas law in construing the Agreement.

### FACTORS TO BE WEIGHED IN DECIDING WHETHER TO GRANT OR DENY A PRELIMINARY INJUNCTION

The four factors to be weighed by a district court in deciding whether to grant or deny

preliminary injunctive relief: (1) whether there is a substantial probability movant will succeed at trial; (2) whether the moving party will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 112 (8th Cir. 1981).

> In balancing the equities no single factor is determinative. The likelihood that plaintiff ultimately will prevail is meaningless in isolation. In every case, it must be examined in the context of the relative injuries to the parties and the public. If the chance of irreparable injury to the movant should relief be denied is outweighed by the likely injury to other parties litigant should the injunction be granted, the moving party faces a heavy burden of demonstrating that he is likely to prevail on the merits. Conversely, where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less.

*Id.* at 113.

## WHETHER UNIVERSAL IS LIKELY TO PREVAIL ON ITS CLAIM FOR VIOLATION OF THE COVENANT NOT TO COMPETE?

Under Kansas law, covenants not to compete which are contained in employment contracts are strictly construed against employers. *Weber v. Tillman*, 259 Kan. 457, 913 P.2d 84 (1996). "A noncompetition covenant ancillary to an employment contract is valid and enforceable if the restraint is reasonable under the circumstances and not adverse to the public welfare. [Citations omitted.] The rationale for enforcing a noncompetition covenant is based on the freedom of contract. [Citation omitted.]" *Weber*, 259 Kan. at 462. The Kansas courts consider four factors in determining whether to enforce a covenant not to compete in an employment contract setting. In addition to questioning the reasonableness of the time and territory restrictions in the covenant not to compete, the Kansas courts consider whether the contract protects a legitimate business interest, imposes an undue burden on the employee, or injures the public. *Allen, Gibbs & Houlik, L.C. v. Ristow*, 32 Kan.App.2d 1051, 1054, 94 P.3d 724, 726 (Kan. App.2004).

In the *Allen, Gibbs & Houlik* case, the Kansas Court of Appeals quoted with approval as follows from a 1923 Kansas case:

> "A person who leaves the employment of another has the right to take with him all the skill he has acquired, all the knowledge that he has obtained, and

3

> all the information that he has received, so long as nothing is taken that is the property of the employer.... Skill and knowledge acquired or information obtained cannot be left behind so long as those things exist within the mind of the employee. All that knowledge, skill and information, except trade secrets, become a part of his equipment for the transaction of any business in which he may engage, just the same as any part of the skill, knowledge, information or education that was received by him before entering upon the employment. Those things cannot be taken from him, although he may forego them, forget them, or abandon them."

*Allen, Gibbs & Houlik, L.C. v. Ristow,* 32 Kan.App.2d at 1058 (quoting *Garst v. Scott,* 114 Kan. 676, 679, 220 Pac. 277 (1923)).

Schmidt contends that he is not violating his covenant not to compete as he is not selling insurance products or encouraging anyone to terminate Universal insurance policies. In support of this contention Schmidt relies upon S.D.C.L. § 58-1-3(3), which provides:

> No provision of this title applies with respect to:
>
> . . . .
>
> (3) Motor vehicle service contracts which are contracts or agreements to perform or indemnify for a specific duration the repair, replacement, or maintenance of motor vehicles for operational or structural failure due to a defect in materials, workmanship, or normal wear and tear, with or without additional provisions for incidental payment of indemnity under limited circumstances, including towing, rental, and emergency road service. Consideration for a motor vehicle service contract shall be stated separately from the price of the motor vehicle;

As the Court explained at the conclusion of the February 25, 2008, hearing, the Division of Insurance is not restrictive in the exercise of its jurisdiction, and the exclusion of motor vehicle service contracts in S.D.C.L. § 58-1-3(3) is a significant consideration in determining whether such contracts should be considered insurance with regard to the December 3, 2001, Employment Agreement. Universal has not presented any evidence that Schmidt is violating the covenant not to compete with regard to selling property, casualty or life insurance in South Dakota. Strictly construing the covenant not to compete against Universal, which could have, but did not more broadly define the conduct which was subject to the covenant not to compete in this employment contract, this Court cannot conclude that Universal will likely prevail on its claim for violation of the covenant not to compete.

4

### WHETHER UNIVERSAL IS LIKELY TO PREVAIL ON ITS CLAIM THAT SCHMIDT IS VIOLATING HIS CONTRACTUAL AND STATUTORY OBLIGATIONS TO PRESERVE AND PROTECT UNIVERSAL'S CONFIDENTIAL INFORMATION AND TRADE SECRETS?

To be a trade secret, under Kansas law, the information in issue must have independent economic value, must derive its value from not being generally known or readily ascertainable, and must have its secrecy maintained by reasonable efforts. *See* K.S.A. § 60-3320(4); *Dodson Intern. Parts, Inc. v. Altendorf*, 347 F.Supp.2d 997 (D. Kan. 2004) (applying Kansas law)(modified on reconsideration in 2005 WL 475363). A plaintiff must describe the subject matter of its alleged trade secrets in sufficient detail to establish each element of a trade secret. *Id.* at 1010 (citing *Utah Med. Prods., Inc. v. Clinical Innovations Assocs., Inc.*, 79 F.Supp.2d 1290, 1312-13 (D.Utah 1999)). In addition, a plaintiff must establish that there has been a misappropriation of the trade secret by a defendant to prevail on a trade secret cause of action. *Dodson Intern. Parts,* 347 F.Supp.2d at 1011.

At this time Universal has not convinced the Court that the relevant terms of the employment agreement applies to the service contracts in issue. It is agreed that Schmidt returned all confidential documents to his employer. Furthermore, there has been no claim or evidence of any predatory practice by Schmidt since he left his employment with Universal. Given the facts that have been presented to the Court at this time, the Court cannot conclude that Universal will likely prevail on its claim regarding trade secrets.

### WHETHER UNIVERSAL WILL SUFFER IRREPARABLE INJURY ABSENT THE PRELIMINARY INJUNCTION?

Although Universal my indeed suffer some loss of business as a result of Schmidt selling service contracts to automobile dealers in South Dakota, it does not appear to the Court that such injury is irreparable. This loss of business does not support granting a preliminary injunction.

### WHETHER THERE WILL BE HARM TO OTHER INTERESTED PARTIES IF INJUNCTIVE RELIEF IS GRANTED?

As the Court explained at the conclusion of the February 25, 2008, motion hearing, this *Dataphase* factor is neutral with regard to granting or not granting the motion for a preliminary injunction.

## GRANTING A PRELIMINARY INJUNCTION?

Although the public has an interest in contracts being honored and in an orderly commerce, the public also has an interest in appropriate business competition and no further restriction on free trade than what is necessary. This *Dataphase* factor concerning the public interest is also neutral with regard to granting or not granting the motion for a preliminary injunction. After considering all

facts or record and the applicable Kansas law, and after weighing the *Dataphase* factors,

**IT IS ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 6) is denied.

Dated this 6th day of March, 2008.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: Shelly Marquelsl
DEPUTY